# 24-1879-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

OFFICE CREATE CORPORATION,

*Petitioner-Appellant,*

— v. —

PLANET ENTERTAINMENT, LLC, STEVE GROSSMAN,

*Respondents-Appellees.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PETITIONER-APPELLANT

MARC R. LABGOLD
PATRICK J. HOEFFNER
LAW OFFICES OF
  MARC R. LABGOLD, PC
*Attorneys for Petitioner-Appellant*
1900 Reston Metro Plaza, Suite 600
Reston, Virginia 20191
(703) 901-8860

CP COUNSEL PRESS    (800) 4-APPEAL • (810902)

## CORPORATE DISCLOSURE STATEMENT
## PURSUANT TO FED R. APP. P. 26.1

Appellant Office Create Corporation ("**OC**") is a corporation established under the laws of Japan, with its principal place of business in Kanagawa, Japan. OC has no parent corporation, and no publicly traded corporation currently owns 10% or more of its stock.

Dated: September 20, 2024

　　　　　　　　　　　　 /s/ Marc R. Labgold
　　　　　　　　　　　　Marc R. Labgold

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT PURSUANT TO
FED R. APP. P. 26.1 ...........................................................................i

TABLE OF AUTHORITIES ...............................................................iv

JURISDICTIONAL STATEMENT .......................................................1

ISSUES PRESENTED FOR REVIEW .................................................3

STATEMENT OF THE CASE................................................................3

    A.    Decisions Appealed...............................................................3

    B.    The Parties.............................................................................3

    C.    Factual and Procedural Background ....................................4

SUMMARY OF THE ARGUMENT .....................................................16

STANDARD OF REVIEW ..................................................................17

ARGUMENT ......................................................................................18

I.    The District Court Erred in Holding OC Conceded CPLR § 5205(c) ..........18

    A.    The Legal Framework of CPLR § 5205....................................18

    B.    A Court Cannot Determine a Question of Law on the Basis of
a Party's Concession .................................................................19

    C.    OC Never Conceded CPLR § 5205 is Preempted by ERISA .............21

II.    The District Court's Rejection of *VFS Financing* was Clearly
Erroneous ......................................................................................28

    A.    In *VFS Financing*, the District Court Applied Supreme Court
and Second Circuit Precedent to Determine Whether CPLR §
5205 is Preempted by ERISA......................................................29

    B.    The Court in *VFS Financing* Held CPLR § 5205 is NOT
Preempted by ERISA ..............................................................31

        1.    The *VFS* Court Concluded CPLR § 5205 has No
Connection with an Employee Benefit Plan .............................31

2.  The *VFS* Court Concluded CPLR § 5205 Does Not Reference an Employee Benefit Plan .........................................32

3.  The *VFS* Court Held CPLR § 5205 is Not Preempted by ERISA ........................................................................34

C.  The District Court's Conclusion that *VFS Financing* was Inapposite is a Clear Error of Law ......................................35

III. The District Court's Error was by No Means Harmless .............................37

CONCLUSION ................................................................................43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Amara v. Cigna Corporation*,
   53 F.4th 241 (2d Cir. 2022) ................................................................2

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
   547 F.3d 109 (2d Cir. 2008) ..............................................................36

*Cal. Div. of Labor Standards Enforcement v.*
   *Dillingham Constr., N.A., Inc.*,
   519 U.S. 316 (1997) ...........................................................................32

*District of Columbia v. Greater Wa. Bd., Trade*,
   506 U.S. 125 (1992) ...........................................................................27

*Egelhoff v. Egelhoff*,
   532 U.S. 141 (2001) ...........................................................................32

*FDIC v. Providence Coll.*,
   115 F.3d 136 (2d Cir. 1997) ..............................................................17

*Felske v. Hirschmann*,
   No. 10 Civ. 8899 (RMB), 2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ......... 25, 26

*Gard Entm't, Inc. v. Block*,
   2012 N.Y. Slip Op. 32220 (N.Y. Sup. Ct. 2012) ..............................39

*Gerosa v. Savasta & Co.*,
   329 F.3d 317 (2d Cir. 2003) ......................................................... 30, 35

*Hattem v. Schwarzenegger*,
   449 F.3d 423 (2d Cir. 2006) ......................................................... 30, 36

*Liberty Mut. Ins. Co. v. Donegan*,
   746 F.3d 497 (2d Cir. 2014) ......................................................... 30, 35

*Mackey v. Lanier Collection Agency & Serv., Inc.*,
   486 U.S. 825, 108 S. Ct. 2182 (1988) .......................................... 33, 34

*McClendon v. City of Albuquerque*,
   630 F.3d 1288 (10th Cir. 2011) ...........................................................2

iv

*N.Y. State Conference of Blue Cross & Blue Shield Plans*
   *v. Travelers Ins.*,
   514 U.S. 645 (1995) ................................................................. *passim*

*Schultz v. National Coalition of Hispanic Mental Health and Human*
   *Services Organizations*,
   678 F. Supp. 936 (DC 1988) ................................................................27

*Smith Engineering Co. v. Rice*,
   102 F.2d 492 (9th Cir. 1938) ..............................................................20

*Smith v. Halter*,
   246 F.3d 1120 (8th Cir. 2001) ...............................................................2

*Snider v. Melindez*,
   199 F.3d 108 (2d Cir. 1999) ........................................................... 16, 20

*Swift Co. v. Hocking Valley Ry. Co.*,
   243 U.S. 281 (1917) ............................................................................20

*Threadgill v. Armstrong World Indus., Inc.*,
   928 F.2d 1366 (3d Cir. 1991) ..............................................................36

*United States v. Castillo*,
   891 F.3d 417 (2d Cir. 2018) ...............................................................20

*United States v. Daley*,
   702 F.3d 96 (2d Cir. 2012) .................................................................17

*United States v. George*,
   975 F.2d 72 (2d Cir. 1992) ........................................................... 27, 28

*United States v. Montague*,
   67 F.4th 520 (2d Cir. 2023) ...............................................................17

*VFS Financing, Inc. v. Elias-Savion-Fox LLC*,
   73 F. Supp. 3d 329 (S.D.N.Y. 2014) ......................................... *passim*

## Statutes & Other Authorities:

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1331 ....................................................................................1

28 U.S.C. § 1367(a) ...............................................................................1

29 U.S.C. § 1001 ....................................................................................3

29 U.S.C. § 1144(a)................................................................30

CPLR § 301...................................................................... 25, 26

CPLR § 302........................................................................25

CPLR § 302(a)(3).................................................................26

CPLR § 302(a)(4).................................................................26

CPLR § 5205................................................................. *passim*

CPLR § 5205(c)............................................................. *passim*

CPLR § 5205(c)(2)...............................................................19

CPLR § 5205(c)(5)......................................................... *passim*

CPLR § 5205(c)(5)(i)......................................................... 24, 39

CPLR § 5222........................................................................7

CPLR § 5222-A(d).................................................................21

CPLR Article 52...................................................................18

Fed. R. App. P. 4(1)(a).............................................................1

Fed. R. App. P. 30.................................................................2

Fed. R. Civ. P. 12(b)..............................................................25

Fed. R. Civ. P. 69(a)..............................................................33

Local Rule 30.1....................................................................2

NY Debt & Cred. L. § 273...........................................................39

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over each of OC's claims under 28 U.S.C. § 1331 because each one necessarily involved an issue of federal law. The district court had supplemental jurisdiction over matters arising under New York state law under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the claim(s) over which it had original jurisdiction.

This Court has appellate jurisdiction under 28 U.S.C § 1291. This appeal arises from OC's efforts to enforce the district court's final judgment after closure of the case. Specifically, this is an appeal from the district court's Order entered on April 16, 2024 (SPA-1) and the subsequent Order entered on June 11, 2024, denying OC's motion for reconsideration (SPA-13).[1]

This appeal is timely. In accordance with Federal Rules of Appellate Procedure Rule 4(1)(a), OC filed its Notice of Appeal on July 10, 2024, which is within 30 days after entry of the order denying the motion for reconsideration. (A-619).[2]

---

[1]  Citations to "**SPA-**" are to the Special Appendix submitted herewith by OC.

[2]  Citations to "**A-**" are to the Joint Appendix.

Judgment was entered, and the case was closed on September 11, 2023. (ECF No. 50).[3] An amended judgment was entered on January 30, 2024. (ECF No. 73). This appeal pertains to OC's efforts to enforce the district court's judgment against the judgment debtors. The district court's decisions concerning the matters appealed are final and, as such, appealable.

The district court's decisions on preemption are "important, but ancillary, matter[s]" that are "subject to appellate review." *Amara v. Cigna Corporation*, 53 F.4th 241, 250 (2d Cir. 2022) (citing *Smith v. Halter*, 246 F.3d 1120, 1122 (8th Cir. 2001)). As the *Amara* court stated, "every post-judgment decision must be assessed on its *own terms* to determine whether it is a final decision amenable to appeal." *Id.* (quoting *McClendon v. City of Albuquerque*, 630 F.3d 1288, 1293 (10th Cir. 2011)(emphasis original). The district court's now final decision concerning the preemption of CPLR § 5205(c) is a distinct legal question that need be appealed to prevent the loss of the subject assets as well as collateral issues concerning the collection efforts against other assets. If appeal is not allowed in this circumstance, "there is a real risk that all opportunity for review will be lost." *Amara*, 53 F.4th at 250. Accordingly, the requirement of a final order is satisfied.

---

[3] Citations to "**ECF No.**" refer to the docket entries in the complete district court record that are not included in the Joint Appendix in compliance with Fed. R. App. P. 30 and Local Rule 30.1.

## ISSUES PRESENTED FOR REVIEW

**Issue 1**: Whether the district court erred in holding OC conceded N.Y. CPLR § 5205(c)(5) is preempted by ERISA (29 U.S.C. § 1001 *et seq.*).

**Issue 2**: Whether the district court erred in holding ERISA precludes the application of N.Y. CPLR § 5205(c)(5), the purpose of which is to prohibit the transfer of money in defraud of creditors.

**Issue 3**: Whether the district court erred in holding N.Y. CPLR § 5205(c)(5) is preempted by ERISA.

## STATEMENT OF THE CASE

### A.   Decisions Appealed

This is an appeal from the April 16, 2024 Order (SPA-1–12) issued by United States District Judge Edgardo Ramos denying OC's objection to Grossman's claim that certain accounts were exempt from collection, and the June 11, 2024, Order denying OC's motion for reconsideration (SPA-13–20).

### B.   The Parties

OC is a Japanese corporation with its principal place of business in Kanagawa, Japan. OC is the owner of all rights, title, and interest in the famous Cooking Mama trademark.

Planet Entertainment, LLC ("**Planet**") is a limited liability corporation with corporate headquarters at 5381 Congress Street, Fairfield, Connecticut.

Steve Grossman ("**Grossman**") is an individual residing at 5381 Congress Street, Fairfield, Connecticut. Grossman founded Planet in 2018 for the purpose of entering into a license agreement with OC for certain intellectual property rights owned by OC. Grossman is also the founder of numerous other limited liability corporations.

OC prevailed in an international commercial arbitration brought against Planet and Grossman ("**Arbitration**"). Planet was found liable in the Arbitration. (ECF No. 4-1 at ¶196). Grossman was found to be Planet's alter ego and, as such, was also found liable in the Arbitration. (*Id.*). The arbitral award was confirmed, and judgment was entered against Planet and Grossman. (ECF Nos. 50 and 73). Planet and Grossman are collectively referred to hereinafter as "**Judgment Debtors**."

### C.  Factual and Procedural Background

On April 6, 2021, OC initiated the Arbitration, seated in New York, New York, against Judgment Debtors asserting claims that included, *inter alia*, trademark and copyright infringement (ECF No. 4-1 at ¶12). At the conclusion of the arbitral proceedings, the arbitral tribunal duly issued a final arbitration award in OC's favor on October 3, 2022 ("**Award**"), unanimously finding Judgment Debtors joint and severally liable to OC for the principal sum of $23,272,374.43 plus interest at a rate

of 9% per annum from October 4, 2022, until all amounts due are satisfied. (ECF No. 4-1 at ¶196).

The arbitral tribunal was concerned that Judgment Debtors' conduct posed a real risk to the enforcement of a future judgment and any possible recovery. Specifically, the arbitral tribunal had found that Grossman had used over $4 million of Planet's funds for personal expenses and "could cause [Planet] to become undercapitalized virtually at will." (ECF No. 4-1 at ¶ ¶ 164–166, 170). Sadly, the arbitral tribunal's concerns would prove prophetic.

On October 17, 2022, OC filed a petition to confirm the Award. (ECF No. 1). Additionally, in an effort to prevent any effort by Judgment Debtors to render themselves judgment-proof, OC filed an *ex parte* motion for an order of attachment and a temporary restraining order against Judgment Debtors' assets until the total amount was satisfied for the purpose of securing satisfaction of the judgment to be entered against Judgment Debtors in this action. (ECF No. 12).

On October 20, 2022, the district court denied OC's motion, finding that OC had not met its burden at that stage of the proceedings, stating that OC had "not sufficiently show[n], at this stage, that there is a 'real risk' as to the enforcement of a future judgment in this matter." (ECF No. 16 at 3).

Judgment Debtors continued to default on their obligations under the Award. On February 2, 2023, in light of new evidence that Judgment Debtors had transferred

assets to a new entity Grossman had formed, doing so to frustrate and prevent OC from collecting judgment, OC filed a renewed *ex parte* motion for an order of attachment and a temporary restraining order against Judgment Debtors' assets. (ECF No. 35).

On February 16, 2023, the district court held a hearing on OC's renewed *ex parte* motion for an order of attachment and a temporary restraining order against Judgment Debtors' assets. (ECF Nos. 40 and 46-1). The district court permitted Judgment Debtors to file their opposition to OC's motion and OC to file its reply. (ECF No. 46-1 at 23:5-24). In support of their opposition, Grossman swore under penalties of perjury that the assets had been transferred to the new entity because it was "the only way to continue the business, pay the employees, and raise money to pay OC." (ECF No. 44 at ¶12; ECF No. 43 at 5). Despite such representations, Judgment Debtors continued to default on their obligations under the Award and have never even offered to make any payment to OC of any amount.

On September 11, 2023, the district court granted OC's petition to confirm the Award, denied Judgment Debtors' cross-petition to vacate the Award, and ordered entry of judgment in favor of OC. (ECF No. 49).[4] The district court subsequently

---

[4] On October 10, 2023, Judgment Debtors filed a notice of appeal (ECF No. 51), which they later abandoned. (ECF No. 68). Nonetheless, the filing of a notice of appeal, again delayed OC's ability to register the judgment in other districts and limited its enforcement of the judgment to assets within the State of New York.

issued an amended judgment adding the omitted monetary amount of $23,272,374.43, plus interest at a rate of 9% per annum from October 3, 2022, until all amounts due are satisfied. (ECF No. 73). Additionally, the district court dismissed OC's renewed *ex parte* motion for an order of attachment and a temporary restraining order against Judgment Debtors' assets as moot. *Id*. As of this filing, Judgment Debtors have made **no payments** to OC and, instead, have continued to frustrate all efforts to recover assets in satisfaction of the judgment.

Following confirmation of the Award and entry of judgment, OC commenced enforcement of the judgment. OC served information subpoenas and restraining notices on, *inter alia*, both Planet and Grossman. In its response to OC's subpoena, Planet confirmed what OC had feared and the arbitral tribunal predicted – despite having sold more than one million copies of the infringing video game and generated more than $40 million in sales, as well as having received millions of dollars from the sales of other video games, Grossman had disposed of all of Planet's assets. In his personal response to OC's information subpoena, Grossman disclosed, *inter alia*, his interests in what were characterized as "retirement" accounts with Merrill Lynch, Pierce, Fenner & Smith Incorporated ("**Merrill**").

Pursuant to Article 52 of New York's Civil Practice Law and Rules ("**CPLR**"), specifically CPLR § 5222, on October 3, 2023, OC served an information subpoena and restraining notice on Merrill advising that, *inter alia*, it was in possession or in

7

custody of property in which the judgment debtor Grossman had an interest. In response to the subpoena and restraining notice, on October 17, 2023, Merrill provided, *inter alia*, account statements for the account numbers ending in 1857, 1877, 5065, 5066, 5067, 5068 and 5078.   Accounts 1857 and 1877 are referred to hereinafter as the "**Personal Merrill Accounts**" and accounts 5065, 5066, 5067, 5068 and 5078 are referred to hereinafter as the "**Merrill RCMA Accounts**".

On December 8, 2023, OC received an "Exemption Claim Form" from Grossman, indicating that his account contained "payments from pensions and retirement accounts" and attaching statements for four of the Merrill RCMA Accounts (5065, 5066, 5067 and 5078). (A-32–54).

On December 12, 2023, OC filed an objection to Grossman's Exemption Claim Form. (A-16–100).  In its memorandum of law in support of its objection, OC asserted, *inter alia*, pursuant to CPLR § 5205(c)(5),

> Additions to [a retirement or other plan established by a corporation, which is qualified under section 401 of the United States Internal Revenue Code of 1986, as amended] shall not be exempt from application to the satisfaction of a money judgment if (i) made after the date that is ninety days before the interposition of the claim on which such judgment was entered, or (ii) deemed to be voidable transactions under article ten of the debtor and creditor law.

(A-21).   OC asserted each of the Merrill RCMA Accounts is a retirement account established by a corporation, qualified under section 401 of the IRS Code, and therefore within the scope of CPLR § 5205(c)(5). (A-22).  OC asserted further:

8

> The current enforcement is based on the underlying arbitration, which commenced on April 6, 2021, therefore, the CPLR § 5205(c)(5) look-back period began on January 6, 2021. Each of the Merrill RCMA Accounts was opened after January 6, 2021 (see Table I), and therefore the funds in each of these accounts are not exempt. Accordingly, Petitioner is entitled to restrain and ultimately execute and levy upon the Merrill RCMA Accounts.

(A-22). OC also asserted, *inter alia*, that the subject transfers all bore the badges of fraud recognized under the New York Debtor and Creditor Law. (A-23–24). OC explained that "the timing of the transfers, the close relationship between the parties to the transfers, Grossman's retention of control over the funds after the transfers, and questionable transfers not in the usual course of business support the conclusion that, *inter alia*, the transfers of funds to the Merrill Accounts were made with the intent to hinder, delay, or defraud Respondents' creditors." (*Id.*).

In his Opposition, Grossman asserted that the application of CPLR § 5205(c)(5) to the Retirement Plan or the Merrill RCMA Accounts is preempted by the federal ERISA statute. (A-135).

In its Reply, OC maintained its position that CPLR § 5205(c)(5) was the applicable law; hence not preempted. (A-369–373). Relying on CPLR § 5205(c)(5), OC maintained its assertion that OC was entitled to execute on the accounts ***under the applicable law*** — *i.e.,* CPLR § 5205(c)(5). (A-369). OC explained that ***all*** of the transfers by Planet and Grossman were made subsequent to the filing of the Arbitration – *i.e.,* during the lookback period under CPLR § 5205(c). (A-369–373).

9

Moreover, the ***entirety*** of the contributions to the Merrill accounts ($1,974,606.28) came directly from the Judgment Debtors alone. OC demonstrated that at least $1,425,000 was transferred from Grossman's personal checking account (BofA 6420) to the Merrill accounts and can be traced directly back to Planet's corporate bank account <u>as follows</u>.[5]

- On September 20, 2021, Grossman transferred $300,000 from Planet's bank account (BofA 8271) to his personal checking account (BofA 6420). (A-440; A-452).

  - On September 20, 2021, Grossman transferred $125,000 from his personal checking account (BofA 6420) to Personal Merrill Account **1857**. (A-388; A-453).

  - On September 20, 2021, Grossman transferred $125,000 from his personal checking account (BofA 6420) to Personal Merrill Account **1877**. (A-399; A-453).

- On September 27, 2021, Grossman transferred $300,000 from Planet's bank account (BofA 8271) to his personal checking account (BofA 6420). (A-440; A-452).

---

[5] Planet is itself a judgment debtor and therefore the transfer from Planet to Grossman is itself an avoidable transfer even before Grossman transfers the money to the Merrill accounts.

- o On September 28, 2021, Grossman transferred $300,000 from his personal checking account (BofA 6420) to Personal Merrill Account **1857**. (A-388; A-453).

- On November 19, 2021, Grossman transferred $200,000 from Planet's bank account (BofA 8271) to his personal checking account (BofA 6420). (A-442; A-455).

  - o On November 19, 2021, Grossman transferred $100,000 from his personal checking account (BofA 6420) to Personal Merrill Account **1857**. (A-390; A-456).

  - o On November 19, 2021, Grossman transferred $100,000 from his personal checking account (BofA 6420) to Personal Merrill Account **1877**. (A-401; A-456).

- On January 11, 2022, Grossman transferred $25,000 from Planet's bank account (BofA 8271) to his personal checking account (BofA 6420). (A-444; A-458).

  - o On January 10, 2022, Grossman transferred $25,000 from his personal checking account (BofA 6420) to Personal Merrill Account **1877**. (A-402; A-459).

- On March 7, 2022, Grossman transferred $150,000 from Planet's bank account (BofA 8271) to his personal checking account (BofA 6420**)**. (A-446; A-461).

  o On March 7, 2022, Grossman transferred $150,000 from his personal checking account (BofA 6420**)** to Personal Merrill Account **1877**. (A-403; A-462).

- On March 31, 2022, Grossman transferred $110,000 from Planet's bank account (BofA 8271) to his personal checking account (BofA 6420**)**. (A-447; A-464).

  o On April 1, 2022, Grossman transferred $100,000 from his personal checking account (BofA 6420**)** to Personal Merrill Account **1877**. (A-405; A-465).

- On September 19, 2022, Grossman transferred $400,000 from Planet's bank account (BofA 8271) to Personal Merrill Account **1857**. (A-396; A-449).

Thus, OC proved (1) Judgment Debtors transferred at least $1,485,000 of Planet's assets, from Planet's corporate checking account (BofA 8271) to Grossman's personal Bank of America checking account (BofA 6420) during the lookback period under CPLR § 5205(c)(5), and (2) Grossman thereafter transferred $1,425,000 of those funds from his personal checking account to his Personal Merrill

Account Nos. 1857 and 1877, again during the lookback period under CPLR § 5205(c)(5).

Additionally, OC demonstrated that on September 9, 2021—*i.e.,* during the lookback period under CPLR § 5205(c)(5)—Grossman transferred an additional $549,606.28 (the remainder of the total contribution amount) from Grossman's personal checking account (BofA 6420) to Merrill RCMA Account 5066. (A-413–414; A-452–453). OC further demonstrated that the bank statements show that between September 2021 and September 2022—*i.e.,* during the lookback period under CPLR § 5205(c)(5)—Grossman transferred all of the funds from his Personal Merrill Accounts into Merrill RCMA Accounts. (A-389; A-391–394; A-396; A-400; A-404; A-406; A-407; A-409; A-414; A-416; A-418; A-420; A-421).

Adding to the already suspect nature of the transfers, OC demonstrated that the account statements show that Merrill RCMA Accounts 5065, 5067, and 5078 were established in the name of Defender Care DBA E-Partners LLC <u>Defined Benefit Plan</u> and Merrill RCMA Accounts 5066 and 5068 were established in the name of Defender Care DBA E-Partners LLC <u>Retirement Plan.</u> (*See, e.g*., A-408; A-412; A-415; A-417; A-419). "Defender Care" is purportedly another (now defunct) company that Grossman established and owned with no connection to Planet. (A-99). Yet, all the funding for these so-called Defender Care accounts was derived exclusively from Judgment Debtors' accounts.

13

On February 7, 2024, Judgment Debtors belatedly requested the opportunity to file a sur-reply to submit additional evidence supporting their position that the Merrill Accounts were ERISA qualified (A-466). OC objected to the untimely request and maintained its position that the ***CPLR was the applicable law*** (A-468–469).

The district court conducted a telephonic hearing on February 20, 2024 (A-561–577). During the hearing, OC:

- reiterated its position that CPLR § 5205(c)(5) is the applicable law. (A-563–565; A-568; A-572–573);

- affirmatively asserted that ***CPLR § 5205(c)(5) is not preempted by ERISA***. (A-563–564);

- requested the claimed exemption be denied because all of the subject funds were fraudulent transfers from Planet's corporate account and/or Grossman's personal accounts to one or more of the Merrill accounts during the statutory lookback period under CPLR § 5205(c) that were made for the purpose of hindering, delaying or defrauding Judgment Debtors' creditors. (A-563–565; A-573); and

- asserted the information that Grossman sought to submit via the requested sur-reply was irrelevant since, irrespective of the ERISA status of the Merrill RCMA Accounts, the transfers were all fraudulent

14

under CPLR § 5205(c), such that federal ERISA was not applicable. (A-568).

The district court granted Grossman's request to submit a sur-reply. In response to Grossman's sur-reply, OC maintained its position that Grossman's new evidence was irrelevant because "all of the additions to the subject Merrill Lynch accounts are properly avoided for the reasons addressed during the telephonic hearing conducted on February 20, 2024, and in OC's prior submissions." (A-559).

In an Order dated April 16, 2024, the district court granted in part and denied in part OC's objection to Grossman's exemption claim. (SPA-1). The district court found that the Personal Merrill Accounts were not exempt. (SPA-10–11).[6] However, the district court denied OC's objection with respect to the Merrill RCMA Accounts. (SPA-11). In reaching its decision, the district court held that OC had conceded the allegation that CPLR § 5205(c)(5) was preempted by ERISA. (SPA-7).

On April 29, 2024, OC filed a motion for reconsideration of the district court's April 16, 2024 Order. (A-584–596). In an Order dated June 11, 2024, the district court denied OC's motion for reconsideration, thereby necessitating the instant appeal. (SPA-13).

---

[6] As explained *supra*, Personal Merrill Accounts 1857 and 1877 had already been emptied by Grossman, with all funds being transferred to Merrill RCMA Account 5078.

## SUMMARY OF THE ARGUMENT

The district court's conclusion that OC **conceded** CPLR § 5205(c) is preempted by ERISA is clearly erroneous and must be reversed. Whether ERISA preempts state law is a pure question of law. The court cannot properly determine a question of law on the basis of a party's concession. *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999). Nonetheless, OC never made any such concession. To the contrary, at all times, OC consistently argued that CPLR § 5205(c)(5) **is the applicable law** as well as affirmatively asserting CPLR § 5205(c) is not preempted under the holding of *VFS Financing, Inc. v. Elias-Savion-Fox LLC*, 73 F. Supp. 3d 329 (S.D.N.Y. 2014), a fact the district court acknowledged in its decision. (SPA-7). It was clear error to find OC had conceded the issue of preemption when the district court itself acknowledged OC had affirmatively asserted, "ERISA does not preempt CPLR section 5205(c)." (*Id*).

Additionally, the district court's conclusion that the holding of *VFS Financing* was limited to SRA/IRA accounts and, therefore, inapposite was a clear error of law. The *VFS* Court's analysis and holding are not limited to a specific type of retirement account. Rather, the *VFS* Court addressed, head-on, the question of whether CPLR § 5205 is preempted by ERISA and rendered an unequivocal holding: "The Court holds that ERISA does not preempt this statute." *VFS Financing*, 73 F. Supp. 3d at

16

332. The district court's misinterpretation and short-shrift dismissal of *VFS Financing* constitutes a reversible error of law.

Had the district court not (i) erred in finding OC had conceded preemption, (ii) compounded that error by dismissing *VFS Financing*, and (iii) ignored OC's assertions and undisputed evidence of Judgment Debtors' fraudulent transfers, it would have necessarily concluded the Merrill RCMA Accounts are not exempt from collection in satisfaction of the judgment pursuant to CPLR § 5205(c)(5).

Accordingly, the district court's conclusion that OC conceded preemption must be reversed, its April 16, 2024 and June 11, 2024 Orders must be vacated, and the case be remanded with instructions that the district court apply the proper legal standard consistent with *VFS Financing,* and the Supreme Court and Second Circuit precedents relied upon therein, to the undisputed evidence of record.

## STANDARD OF REVIEW

Each issue appealed presents a mixed question of law and fact or simply a question of law; therefore, each is subject to *de novo* review. "[M]ixed questions of law and fact are . . . reviewed *de novo*." *United States v. Montague*, 67 F.4th 520, 527 (2d Cir. 2023)(quoting *FDIC v. Providence Coll.*, 115 F.3d 136, 140 (2d Cir. 1997)); *see also United States v. Daley*, 702 F.3d 96, 99-100 (2d Cir. 2012).

17

# ARGUMENT

## I.    The District Court Erred in Holding OC Conceded CPLR § 5205(c)

The district court erred in holding that OC had conceded CPLR § 5205(c) is preempted by ERISA. OC never made any such concession. To the contrary, at all times, OC consistently argued that CPLR § 5205(c)(5) **is the applicable law** as well as affirmatively asserting CPLR § 5205(c) is not preempted under the holding of *VFS Financing*, 73 F. Supp. 3d 329.

### A.    The Legal Framework of CPLR § 5205

Article 52 of the CPLR pertains to the enforcement of money judgments. CPLR § 5205 identifies "personal property exempt from application to the satisfaction of money judgments." CPLR § 5205(c) sets out the exemption of trusts from application to the satisfaction of a money judgment. Included in the exemption under § 5205(c) are, *inter alia*:

> For purposes of this subdivision, all trusts, custodial accounts, annuities, insurance contracts, monies, assets or interests established as part of, and all payments from, either any trust or plan, which is qualified as an individual retirement account under section four hundred eight or section four hundred eight A of the United States Internal Revenue Code of 1986, as amended, a Keogh (HR-10), retirement or other plan established by a corporation, which is qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, or created as a result of rollovers from such plans pursuant to sections 402 (a) (5), 403 (a) (4), 408 (d) (3) or 408A of the Internal Revenue Code of 1986, as amended, or a plan that satisfies the requirements of section 457 of the Internal Revenue Code of 1986, as amended, shall be considered a trust

18

> which has been created by or which has proceeded from a person other than the judgment debtor, even though such judgment debtor is (i) in the case of an individual retirement account plan, an individual who is the settlor of and depositor to such account plan, or (ii) a self-employed individual, or (iii) a partner of the entity sponsoring the Keogh (HR-10) plan, or (iv) a shareholder of the corporation sponsoring the retirement or other plan or (v) a participant in a section 457 plan.

CPLR § 5205(c)(2).

However, CPLR § 5205(c)(5) limits the exemption under § 5205(c)(2) to allow creditors to reach contributions made during or after the 90–day window that preceded the filing of the creditor's lawsuit or by fraudulent efforts to shield otherwise collectable assets:

> Additions to an asset described in paragraph two of this subdivision shall not be exempt from application to the satisfaction of a money judgment if (i) made after the date that is ninety days before the interposition of the claim on which such judgment was entered, or (ii) deemed to be voidable transactions under article ten of the debtor and creditor law.

CPLR § 5205(c)(5).

## B. A Court Cannot Determine a Question of Law on the Basis of a Party's Concession

Whether ERISA preempts state law is a pure question of law. The answer depends on the application of "the [Supreme Court's] modern, functional test of ERISA preemption, which asks whether a state law conflicts with ERISA's program or objectives." *VFS Financing*, 73 F. Supp. 3d. at 344. The district court, however, failed to perform that requisite analysis and, instead, simply concluded that OC had

conceded CPLR § 5205(c) is preempted by ERISA. That was a clear error of law.

This Court's precedents make clear that a court cannot determine a question of law

on the basis of a party's concession:

> The court cannot properly determine a question of law on the
> basis of a party's concession (much less by the concession of an
> unrepresented party). The meaning of a statute, for example,
> cannot vary from case to case depending on concessions a party
> may have made. *Cf. Swift Co. v. Hocking Valley Ry. Co*., 243 U.S.
> 281, 290 (1917) ("The duty . . . of every judicial tribunal is . . .
> to determin[e] rights of persons or of property, which are . . .
> controverted in the particular case before it. . . . No stipulation of
> parties or counsel . . . can . . . affect the duty of the court in this
> regard.") (internal quotation marks and citation omitted)
> (Brandeis, J.); *Smith Engineering Co. v. Rice*, 102 F.2d 492, 499
> (9th Cir. 1938) ("We see no reason why we should make what
> we think would be an erroneous decision, because the applicable
> law was not insisted upon by one of the parties.").

*Snider*, 199 F.3d at 114; *United States v. Castillo*, 891 F.3d 417, 425-26 (2d Cir.

2018) ("It is well-established that a court 'cannot properly determine a question

of law on the basis of a party's concession.'").

Thus, even if *arguendo* OC had conceded the point of law, which, as explained

below, is contested, the district court was not relieved from performing the

applicable legal analysis as required under the Supreme Court's modern, functional

test of ERISA preemption. *VFS Financing*, 73 F. Supp. 3d. at 342-343 (citing *N.Y.

State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins*., 514 U.S. 645,

656 (1995)).

20

Accordingly, the district court's reliance on the alleged concession of law to conclude that CPLR § 5205(c) is preempted by ERISA is clearly erroneous and must be vacated, and the case be remanded with instructions that the district court apply the proper legal standard consistent with *VFS Financing* and the precedents relied upon therein.

## C. OC Never Conceded CPLR § 5205 is Preempted by ERISA

Following the entry of judgment against Planet and Grossman, OC restrained the Personal Merrill Accounts and the Merrill RCMA Accounts. Without specifying any particular account, Grossman objected that the Merrill-held accounts were exempt because they contained "Payments from pensions and retirement accounts." (A-33). OC objected thereto pursuant to CPLR § 5222-A(d) and argued that the accounts were not exempt pursuant to CPLR § 5205(c)(5). (A-16–100).

From the outset, OC asserted CPLR § 5205(c) **is the applicable law**. Specifically, in its memorandum of law in support of its objection to Grossman's exemption claim, OC clearly and unequivocally asserted:

a. CPLR § 5205(c)(5) was the applicable law (A-18; A-21–23);

b. the Merrill Accounts "include funds that are not exempt under CPLR § 5205(c)(5), and as such, Grossman's exemption claim should be rejected" (A-18);

c. under CPLR § 5205(c)(5), each of the identified transfers was not exempt because they were made during the lookback period of § 5205(c)(5) (A-22); and

d. each of the transfers was made with the intent to hinder, delay or defraud OC and therefore, voidable under CPLR § 5205(c)(5). (A-23–24).

In its Reply, OC maintained its position that CPLR § 5205(c)(5) **is the applicable law**. (A-369). Once again, OC clearly and unequivocally stated, *inter alia*, that it was entitled to restrain and ultimately execute and levy upon the restrained Personal Merrill Accounts and the Merrill RCMA Accounts pursuant to CPLR § 5205(c)(5). (*Id.*).

Yet again, in response to Grossman's request for a sur-reply, OC reiterated its position that CPLR § 5205(c)(5) was the applicable law. (A-468). Of particular relevance, OC made clear that irrespective of the ERISA status of the accounts, the transfers were voidable, and the funds were not exempt pursuant to CPLR § 5205(c)(5):

> Yet, even if *arguendo* they were ERISA qualified, the Respondents' transfers of all of the affected funds into those accounts are properly avoided because they occurred within the lookback period proscribed by C.P.L.R. 5205(c)(5), with the intent to hinder, delay, or defraud creditors. *See*, ECF No. 59 at 4-7; ECF No. 67 at 5-9. Thus, Respondents' request to introduce untimely evidence concerning any alleged ERISA qualification is futile.

(*Id.*).

During the oral hearing, OC yet again reiterated its position that CPLR § 5205(c)(5) was the applicable law and explained, *inter alia*, that CPLR § 5205(c) provides that transfers to such accounts as are listed in § 5205(c)(2) are voidable where they are made during the look-back period and with the intent to defraud, hinder, or frustrate collection. (A-563–565). OC clearly and unequivocally stated CPLR § 5205(c) **is not preempted by ERISA**:

> Now Grossman asserts that the funds are exempt because they're held in ERISA-qualified accounts. We submit that the argument that they're ERISA-qualified accounts or not, however, is entirely irrelevant because **we rely on CPLR 5205(c), which is not preempted by ERISA**, as this court has held in *VFS Financing*—just for the record, that's 73 F.Supp.3d 329 (S.D.N.Y. 2014)—and follow-ons from Supreme Court cases in 1995 and 1997.

(A-563–564)(emphasis added). The plain language of the transcript makes clear – OC did not concede preemption. Furthermore, as detailed in the following section, *VHS Financing* specifically, with reference to CPLR § 5205, "holds that ERISA does not preempt this statute." *VFS Financing*, 73 F. Supp. 3d at 332. Had the district court not summarily dismissed *VFS Financing* it would have necessarily reached the same conclusion.

Additionally, OC made clear, and the district court acknowledged, the reason why OC considered the ERISA status of the accounts to be irrelevant:

23

> THE COURT: And it's your position that even if these accounts were subsequently to have included retirement funds of other individuals, that would not matter.
>
> MR. LABGOLD: We believe and we submit that it wouldn't matter because we can see the actual transfers, and we've documented that for the Court, and **if the Court approaches it from a 5205(c)(5)(i) perspective, when you void the transfer, it's effectively taking the money, which should have been available to OC in the first instance, and taking it before it was deposited into those accounts. And since it's coming, again, from Planet to Grossman and ultimately from Grossman for all of the funds into these accounts, it's his personal money that we're talking about here**—
>
> THE COURT: Okay.
>
> MR. LABGOLD: ——that is rightfully collectable by OC.
>
> THE COURT: **And because it doesn't matter**, I think they're not prejudiced if I were to allow Mr. Grossman to put in that additional solitary affidavit as a surreply.

(A-568)(emphasis added).

Tellingly, neither Planet nor Grossman asserted that OC had conceded CPLR § 5205(c)(5) was preempted by ERISA. At the oral hearing, when OC stated, "**we rely on CPLR 5205(c), which is not preempted by ERISA**, as this court has held in *VFS Financing*," there was no objection that OC was raising a new issue or that preemption had been conceded. (A-563–564)(emphasis added). Surely, if preemption had been conceded, Judgment Debtors would have immediately objected

to OC's sudden reversal. That they did not is objective evidence that the real parties-in-interest understood OC had not conceded preemption.[7]

In its April 16, 2024 Order, the district court relied upon *Felske v. Hirschmann*, No. 10 Civ. 8899 (RMB), 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) as support for its conclusion that OC had conceded the issue of preemption. (SPA-7). However, *Felske* is plainly distinguishable from the present case. In *Felske*, the defendants had filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b) arguing, *inter alia*, that (1) jurisdiction could not be based on CPLR § 301; (2) the long arm jurisdiction under CPLR § 302 is also not available; and (3) the action should be dismissed based on the doctrine of *forum non conveniens*. *Id.* at *2-3. In their opposition, plaintiffs argued the complaint stated a viable cause of action because (1) long arm jurisdiction was proper under CPLR § 302, and (2) New York was the appropriate forum. *Id.* at *3. Plaintiffs neither addressed CPLR § 301 nor offered any argument that contradicted defendants' reliance upon CPLR § 301. Indeed, in its reply, defendants specifically stated, "Plaintiff ***does not controvert the facts*** stated

---

[7] In its motion for reconsideration, OC asserted the district court had erred because, *inter alia*, OC had not conceded preemption. (A-590–591). Yet in their opposition, Planet and Grossman did not even belatedly claim that OC had conceded preemption or that they would be prejudiced because they had believed OC had conceded the point. (A-597). Instead, they simply note that the district court concluded with "a single relevant observation," that "Office Create did not respond to the preemption argument, so the Court may deem the point conceded." (A-603).

in the [defendants'] affirmations, ***or raise any issue under CPLR §§ 301*** and

302(a)(3)-(4)." *Felske v. Hirschmann*, No. 10 Civ. 8899 (RMB), ECF No. 38

(S.D.N.Y. Nov. 21, 2011) (emphasis added). Accordingly, the court found that the

plaintiffs had conceded the specific issue under CPLR § 301 by not controverting

defendants' CPLR § 301 argument.

The facts of the present case are starkly different where here, OC continued

to expressly argue that CPLR § 5205(c)(5) was the applicable law contradicting

Judgment Debtors' assertion that CPLR § 5205(c)(5) was not the applicable law.

Additionally, unlike the defendants in *Felske*, in the present case Judgment Debtors

never asserted that OC had conceded an issue. Indeed, Judgment Debtors

acknowledged that OC maintained its argument that CPLR § 5205(c)(5) applied. (A-

569–570). Critically, in sharp contrast to *Felske*, OC affirmatively asserted "**we rely**

**on CPLR 5205(c), which is not preempted by ERISA**, as this court has held in

*VFS Financing*."[8] Thus, *Felske* does not support the district court's finding that OC

conceded the issue of preemption. *Felske*, 2012 WL 716632, at \*3.

It does not stand to reason that OC "conceded" CPLR § 5205(c) is preempted

by ERISA and, at the same time, argued for the application of CPLR § 5205(c) to

the fraudulent transfers. Nonetheless, it appears the district court ignored OC's

---

[8]  The parties in *Felske* had waived oral argument. *Felske*, 2012 WL 716632, at \*3.

arguments and concluded OC conceded because it did not use the word "preempt" or "preemption" in its Reply. This is a clear error, given the facts and law presented. Furthermore, the district court's holding demands an unnecessarily high standard given the fact that the Supreme Court emphasized "the fact that the so-called 'preemption' provision in ERISA does not use the word 'preempt.'" *District of Columbia v. Greater Wa. Bd., Trade,* 506 U.S. 125, 136 (1992). Given that OC consistently argued CPLR § 5205(c)(5) was **the applicable law**—not ERISA—it was clear error for the district court to conclude OC conceded the exact opposite. "[C]ommon sense must not be left at the courthouse door." *Id.,* at 135, n.3 (quoting *Schultz v. National Coalition of Hispanic Mental Health and Human Services Organizations*, 678 F. Supp. 936, 938 (DC 1988)).

Yet even if, *arguendo*, OC was required to use the specific word "preemption" above and beyond substantively arguing that CPLR § 5205(c)(5) was the applicable law, which improperly raises form over substance, it is undisputed that OC used the magic words during the oral hearing. (A-563–564). *See United States v. George*, 975 F.2d 72, 78-79 (2nd Cir. 1992) (failure to raise legal theory in memorandum of law did not constitute waiver because theory was raised at oral argument in the trial court). As noted above, when OC did so, Judgment Debtors did not object or claim surprise but instead acknowledged OC's assertion that ERISA was not applicable in favor of CPLR § 5205(c)(5). (A-569–570). Indeed, the district court acknowledged

OC's reliance upon *VFS Financing* "for the proposition that ERISA does not preempt CPLR section 5205(c)." (SPA-7). The district court, however, inexplicably concluded that OC **conceded** that same exact point.

It was clear error to find OC had conceded the issue of preemption when the district court itself acknowledged OC had affirmatively asserted "ERISA does not preempt CPLR section 5205(c)." *George*, 975 F.2d at 78-79.

Accordingly, the district court's conclusion that OC conceded preemption must be reversed, the April 16, 2024 and June 11, 2024 Orders must be vacated, and the case be remanded with instructions that the district court apply the proper legal standard consistent with *VFS Financing* and the precedents relied upon therein.

## II.    The District Court's Rejection of *VFS Financing* was Clearly Erroneous

In its order denying OC's objection to Grossman's exemption, the district court acknowledged OC's reliance upon *VFS Financing*'s holding that ERISA does not preempt CPLR § 5205. (SPA-7). However, the district court dismissed OC's reliance, having mistakenly concluded that the holding in *VFS Financing* was limited to "'SRA/IRA' accounts that are not covered by ERISA's anti-alienation provision." (*Id*.). This was a clear error of law. The *VFS* Court's analysis and holding are not so limited. Rather, the *VFS* Court addressed, head-on, the question of whether CPLR § 5205 is preempted by ERISA and rendered an unequivocal holding: "The Court holds that ERISA does not preempt this statute." *VFS*

*Financing*, 73 F. Supp. 3d at 332. The district court's misinterpretation and short-shrift dismissal of *VFS Financing* constitutes a reversible error of law.

> **A. In *VFS Financing,* the District Court Applied Supreme Court and Second Circuit Precedent to Determine Whether CPLR § 5205 is Preempted by ERISA**

In *VFS Financing*, the District Court for the Southern District of New York set out "the modern, functional test of ERISA preemption" in light of the Supreme Court's 1995 narrowing of the reading of ERISA's preemption clause ("**Post-1995 Test**"). *VFS Financing*, 73 F.Supp.3d at 344.

Prior to 1995, the Supreme Court had interpreted the scope of ERISA's preemption clause, emphasizing the broad sweep of the phrase "relate to," terming it "deliberately expansive," "broadly worded," and "conspicuous for its breadth." *Id*. at 342 (internal citations omitted). "In 1995, however, the Court adopted a narrower reading of ERISA's preemption clause, so as to refocus the ERISA preemption inquiry on whether the state law at issue in fact presented a functional conflict to the ERISA regime." *Id*. (citing *Travelers Ins.*, 514 U.S. at 656. The *VFS* Court further explained,

> Consistent with the approach announced in *Travelers*, the Court since 1995 has applied ERISA's preemption clause to sustain state regulations that might not have survived its earlier, and more expansive, approach to ERISA preemption....
>
> In evaluating claims of preemption by ERISA, courts now "begin with the assumption that 'Congress does not intend

29

> to supplant state law,' a presumption that is particularly strong for 'state action in fields of traditional state regulation.'" ... To find preemption of state law, a "'clear and manifest purpose' by Congress is required."

*Id.* at 343 (internal citations omitted).

The *VFS* Court summarized the two prongs of the Post-1995 Test for evaluating claims of preemption by ERISA as follows:

> In evaluating claims of preemption by ERISA, courts now "begin with the assumption that 'Congress does not intend to supplant state law,' a presumption that is particularly strong for 'state action in fields of traditional state regulation.'" *Gerosa v. Savasta & Co.*, 329 F.3d 317, 323 (2d Cir. 2003) (quoting *Travelers*, 514 U.S. at 654–55, 115 S.Ct. 1671). To find preemption of state law, a "'clear and manifest purpose' by Congress is required." *Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497, 506 (2d Cir.2014) (quoting *Travelers*, 514 U.S. at 655, 115 S.Ct. 1671). These principles inform both prongs of the test of ERISA preemption. **Specifically, a state law "relates to an employee benefit plan, within the meaning of 29 U.S.C. § 1144(a), if it has a 'connection with' or 'reference to' such a plan."** *Hattem*, 449 F.3d at 428 (quoting *Travelers*, 514 U.S. at 656, 115 S.Ct. 1671 ).

*VFS Financing*, 73 F. Supp. 3d at 343 (emphasis added).

The *VFS* Court stated explicitly that it would rely upon the Post-1995 Test to determine whether ERISA preempts CPLR § 5205: "In deciding whether N.Y. CPLR § 5205 'relates to' ERISA so as to be preempted, the Court considers these prongs in turn." *Id.*

By its clear language, the *VFS* Court's analysis was not myopically focused on SRA/IRA accounts, as the district court below erroneously concluded. (SPA-7).

30

To the contrary, the *VFS* Court set out to determine whether CPLR § 5205 is preempted by ERISA under the Post-1995 Test proscribed by this Court and the Supreme Court of the United States.

## B. The Court in *VFS Financing* Held CPLR § 5205 is NOT Preempted by ERISA

As detailed below, applying the Post-1995 Test to CPLR § 5205, the *VFS* Court concluded CPLR § 5205 neither has a "connection with" ***nor*** a "reference to" ERISA and, therefore, **held CPLR § 5205 is not preempted by ERISA**. *Id.* at 345 and 347.

### 1. The *VFS* Court Concluded CPLR § 5205 has No Connection with an Employee Benefit Plan

Applying the Post-1995 Test, the *VFS* Court first analyzed whether CPLR § 5205 had an impermissible connection with an employee benefit plan, looking to the objectives of the ERISA statute as a guide and analyzing whether CPLR § 5205 conflicted with such objectives. *Id*. at 344-45.

Relying upon the Supreme Court's interpretation of the "two overarching goals of the [ERISA] statute: (1) to protect ... the interests of participants in employee benefit plans and their beneficiaries," and "(2) to ensure that plans and plan sponsors would be subject to a uniform body of benefits law," the *VFS* Court found that CPLR §5205 "***does not*** implicate any of these concerns." *Id*. (internal citations omitted; emphasis added). The court reasoned that while under the Supreme Court's

expansive pre-1995 approach to ERISA, CPLR § 5205 might have been preempted because it literally "relates to" an ERISA plan, the same conclusion could not be reached under the Post-1995 Test because "[s]imply put, there is no ERISA goal, relationship, or provision with which N.Y. CPLR § 5205 can be said to conflict." *Id*. at 345. The VFS Court further elucidated:

> In contrast, N.Y. CPLR § 5205 is both a "generally applicable" law and one that, rather than bearing on plan administration, operates in an area debtor/creditor relations—"where ERISA has nothing to say." *Id*. at 148, 121 S.Ct. 1322. It is akin to the state laws, including laws that taxed or surcharged accounts governed by ERISA, which the Supreme Court and Second Circuit have upheld against claims of preemption, on the grounds that such laws had only an incidental or indirect effect on retirement accounts.

*Id*. (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)).

## 2. The *VFS* Court Concluded CPLR § 5205 Does Not Reference an Employee Benefit Plan

The *VFS* Court next turned to the alternative question of whether CPLR § 5205 includes a "reference to" ERISA. *Id*. at 347. In accordance with the Supreme Court's guidance, the court set out to determine whether CPLR § 5205 "acts immediately and exclusively upon ERISA plans" or "the existence of ERISA plans is essential to the law's operation." *Id*. (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc*., 519 U.S. 316, 325 (1997)). The *VFS*

Court held that "[m]easured against these standards, **_N.Y. CPLR § 5205 is not_** **_preempted_**." _Id_. (emphasis added).

In assessing whether CPLR § 5205 acts "immediately and exclusively upon ERISA plans," the _VFS_ Court concluded it **_did not_** because CPLR § 5205 encompasses "a wide range of assets, including, among others, religious texts, family pictures, domestic animals, a wedding ring, clothing, a car, and—relevant here—retirement funds." _Id_. at 347-348. Hence, retirement funds **_are not_** the exclusive focus of CPLR § 5205. The Court noted that in this regard, CPLR § 5205 is in sharp contrast with other laws that explicitly referred and solely applied to ERISA plan benefits and, as such, had been struck down by Supreme Court precedent. _Id_. at 347-348

Next, the _VFS_ Court confirmed the "existence of ERISA plans" is not essential to the operation of CPLR § 5205 because § 5205 "**_does not_** single out ERISA plans for special treatment; instead, it sets out a list of non-garnishable items, from clothing to books to pets." _Id_. at 348 (emphasis added). The _VFS_ Court further reasoned:

> Indeed, in a case involving a claim of ERISA preemption based on the "reference to" prong, the Supreme Court emphasized that "state law methods for collecting money judgments must, as a general matter, remain undisturbed by ERISA." _Mackey_, 486 U.S. at 834, 108 S.Ct. 2182; _see also_ Fed.R.Civ.P. 69(a). New York's law is such a state-law method.

*Id.* (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 836 (1988)).

### 3. The *VFS* Court Held CPLR § 5205 is Not Preempted by ERISA

Having performed the foregoing analysis, the *VFS* Court held: "[f]or these reasons, **application of New York's anti-garnishment statute** to Fox's SRA/IRA account **is not preempted by ERISA**." *Id.* at 348 (emphasis added). Of critical importance, this holding is not limited to SRA/IRA accounts as the *VFS* Court more succinctly stated: "The Court holds that ERISA does not preempt [CPLR § 5205]." *Id.* at 332.

The district court below erred as a matter of law by dismissing *VFS Financing* as limited to SRA-IRA accounts and, therefore, inapposite. The Post-1995 Test the *VFS* Court performed, as proscribed by Supreme Court and Second Circuit precedent, was focused on CPLR § 5205 and ERISA – irrespective of the specific nature of the particular account. *Id.* at 344-45 ("But under the modern, functional test of ERISA preemption, which asks whether a state law conflicts with ERISA's program or objectives, it is hard to find any such conflict."); and 345 ("N.Y. CPLR § 5205 is both a 'generally applicable' law and one that, rather than bearing on plan administration, operates in an area debtor/creditor relations—'where ERISA has nothing to say.'") and 347 ("Measured against these standards, N.Y. CPLR § 5205 is not preempted.")

**C. The District Court's Conclusion that *VFS Financing* was Inapposite is a Clear Error of Law**

In its April 16, 2024 Order, the district court committed an error of law by concluding *VFS Financing* was limited to "'SRA/IRA' accounts that are not covered by ERISA's anti-alienation provision." (SPA-7). While the passage cited by the district court speaks to SRA/IRA accounts, the issue addressed and the holding of *VFS Financing* are not so limited. To the contrary, the *VFS* Court addressed the broader issue and held that *N.Y. CPLR § 5205 is not preempted* by ERISA. *Id.* at 332; *see also id.* at 345 and 347. The district court's dismissal of *VFS Financing* as inapposite was a clear error of law.

Even if, *arguendo*, the district court did not believe it was bound by *VFS Financing*, the district court was required to follow the Supreme Court and Second Circuit precedents the *VFS* Court followed. It is impossible to harmonize the district court's findings that OC cited *VFS Financing* for the legal principle that CPLR § 5205 is not preempted by ERISA and, at the same time, find OC conceded CPLR § 5205 is preempted by ERISA. Yet, that is precisely what the district court did. Having concluded that OC conceded the issue, the district court not only erred in dismissing *VFS* Financing as inapposite, it further erred by not performing the preemption analysis required under this Court's precedents cited therein. *See, e.g., Gerosa,* 329 F.3d at 323 (quoting *Travelers,* 514 U.S. at 654–55, 115 S.Ct. 1671); *Liberty Mut. Ins.*, 746 F.3d at 506 (quoting *Travelers,* 514 U.S. at 655, 115 S.Ct.

35

1671); *Hattem v. Schwarzenegger*, 449 F.3d 423, 428 (2d Cir. 2006) (quoting *Travelers*, 514 U.S. at 656, 115 S.Ct. 1671).

Had the district court applied the holding of *VFS Financing* or performed the Post-1995 Test itself, it would have necessarily concluded § 5205(c)(5) is not preempted by ERISA.[9]  Instead, the district court erroneously concluded *sua sponte* that OC had conceded preemption, ignored OC's affirmative reliance upon CPLR § 5205(c)(5) and evidence of fraudulent transfers under CPLR § 5205(c)(5), concluded *VFS Financing* was inapposite and, without anything more, proceeded under the erroneous conclusion that CPLR § 5205(c) is preempted by ERISA.  As such, the district court's decision is a clear error of law, which conflicts with the applicable precedents of the Supreme Court of the United States, this Court, and the District Court for the Southern District of New York.

Accordingly, the district court's conclusion that OC conceded preemption must be reversed, the April 16, 2024 and June 11, 2024 Orders must be vacated, and the case be remanded with instructions that the district court apply the proper legal standard consistent with *VFS Financing* and the precedents relied upon therein.

---

[9]    At a minimum, the district court was required to perform an independent analysis if the court's decision departed from controlling precedent. *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 547 F.3d 109, 112 n.4 (2d Cir. 2008)(quoting *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991)).

### III. The District Court's Error was by No Means Harmless

Having erred in concluding OC conceded preemption and dismissing *VFS Financing* as inapposite, the district court foreclosed the application of CPLR § 5205(c)(5) and ignored the undisputed evidence of Planet's and Grossman's fraudulent transfers from Planet's corporate bank account and Grossman's personal bank accounts, and ultimately into the current Merrill RCMA Accounts. OC has asserted and provided undisputed substantial evidence that the creation of the Merrill RCMA Accounts and each of the additions to those accounts was in defraud of Judgment Debtors' creditors, namely OC.[10] Had the district court followed the proper procedure and considered the undisputed evidence under CPLR § 5205(c)(5), it would have necessarily found the funds ***not*** exempt from collection.

Under CPLR § 5205(c)(5), additions to a retirement plan "shall not be exempt from application to the satisfaction of a money judgment if (i) made after the date that is ninety days before the interposition of the claim on which such judgment was entered, or (ii) deemed to be voidable transactions under article ten of the debtor and creditor law."

New York's Debtor and Creditor Law provides, in relevant part:

---

[10] For the avoidance of doubt, OC has alleged that each of the transfers that precede the funds being held in the Merrill RCMA Accounts, commencing with the transfers from judgment debtor Planet's corporate account to Grossman's personal accounts, were fraudulent transfers during the lookback period of CPLR § 5205(c)(5).

A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay or defraud any creditor of the debtor…

(b) In determining actual intent under paragraph one of subdivision (a) of this section, consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

...

NY Debt & Cred L § 273 (2021).

OC presented undisputed evidence proving (a) all of the transfers and the establishment of the Merrill RCMA Accounts themselves were during the lookback period of § 5205(c)(5)(i) as well as (b) the badges of fraud under New York's Debtor & Creditor Law including, *inter alia*: (i) the timing of the transfers, (ii) the transfers were to an insider, (iii) the judgment debtor retained control over the funds after the transfers, and (iv) the transfers were questionable and not in the usual course of business. *Id*.; *see also Gard Entm't, Inc. v. Block*, 2012 N.Y. Slip Op. 32220 (N.Y. Sup. Ct. 2012) (Holding that circumstances constituting "badges of fraud" include: a close relationship between the parties to the alleged fraudulent transaction, a questionable transfer not in the usual course of business, inadequacy of the consideration, the transferor's knowledge of the creditor's claim and the inability to pay it, retention of control of the property by the transferor after the conveyance, and timing of the transfer.).

<u>First</u>, OC asserted and submitted undisputed evidence demonstrating that the Merrill RCMA Accounts were opened, and all of the relevant transfers and, necessarily, the additions to the Merrill RCMA Accounts were made within the statutory lookback period of CPLR § 5205(c)(5). (A-23–24; A-369–373; A-388–394; A-396; A399–407; A-409; A-413; A-414; A-416; A-418; A-420; A-421; A-440;

A-442; A-444; A-446; A-447; A-449; A-452; A-453;  A-455; A-456; A-458; A-459;

A-461; A-462; A-464; A-465). Additionally, OC asserted and submitted undisputed

evidence demonstrating that the opening of the accounts and transfers into the

Merrill RCMA Accounts were during the Arbitration against Judgment Debtors and

shortly before the issuance of the Award. (*Id.*). Thus, the timing of opening the

accounts and all of the relevant transfers evidence badges of fraud.

*Second*, OC asserted and submitted undisputed evidence of the close

relationship between the parties to the transfers – *i.e.,* all of the transfers were

between the Judgment Debtors and for their benefit.  The undisputed evidence shows

the entirety of the contributions ($1,974,606.28) to the Merrill RCMA Accounts

came directly from the Judgment Debtors' accounts. (A-369–373; *see also, id*.). This

is not a case where, for example, a company and its employees deposited the subject

funds over many years into long-established retirement accounts.  On the contrary,

in the present case, the funds were all deposited during the two-year pendency of the

Arbitration, with all funds coming exclusively from the Judgment Debtors' accounts.

(*Id.*).  Thus, the transfers were to an insider, evidencing additional badges of fraud.

*Third*, OC asserted and submitted undisputed evidence that the Judgment

Debtors, and more particularly Grossman, retained control over the funds after the

transfers. (A-24).  The bank statements for the Merrill RCMA Accounts show that

Grossman made all of the additions from his personal checking account or Planet's

bank account, with Grossman then transferring the assets between the different Merrill RCMA Accounts. (A-369–373; *see also,* A-23–24; A-369–373; A-388–394; A-396; A399–407; A-409; A-413; A-414; A-416; A-418; A-420; A-421; A-440; A-442; A-444; A-446; A-447; A-449; A-452; A-453; A-455; A-456; A-458; A-459; A-461; A-462; A-464; A-465). All statements for those accounts bear Grossman's home address. (*See, e.g.,* A-408; A-412; A-415; A-417; A-419). Even though money came directly from Planet and Grossman, the Merrill RCMA Accounts were established, not in the name of, or for the benefit of Planet's employees, but instead in the name of an unrelated defunct Grossman-controlled entity called "Defender Care" (*Id.*; A-99) and Grossman is the trustee of the plan. (*See, e.g.*, A-309). Thus, the fact that the Judgment Debtors retained control over the funds after the transfers evidence additional badges of fraud.

*Fourth*, OC asserted and submitted undisputed evidence that Judgment Debtors made questionable transfers that were not in the usual course of business, including, for example, remarkably large transfers. For example, the opening statement for the 5078 account shows two transfers totaling $810,000.00 deposited over a period of two days and the remaining ~$1,210,000 deposited in two tranches in May and September of 2022. (A-24; A-372–373; A-420–421). Thus, the questionable transfers not in the usual course of business evidence additional badges of fraud.

The district court, however, did not evaluate the foregoing evidence and address whether the transfers and creation of the accounts were in defraud of creditors. Indeed, the district court did not analyze the fraudulent transfers. Instead, the district court erroneously concluded that OC had conceded preemption. It compounded that error by dismissing *VFS Financing* as inapposite, thereby foreclosing OC's right to the proper application of CPLR § 5205(c)(5) and the collection of the funds held in the Merrill RCMA Accounts for the satisfaction of the district court's judgment.

Accordingly, the district court's conclusion that OC conceded preemption must be reversed, the April 16, 2024 and June 11, 2024 Orders must be vacated, and the case be remanded with instructions that the district court apply the proper legal standard consistent with *VFS Financing* and the precedents relied upon therein.

## CONCLUSION

For the reasons set forth hereinabove, OC respectfully requests the Court reverse the district court's finding that OC conceded CPLR § 5205 is preempted by ERISA, vacate the district court's April 16, 2024 and June 11, 2024 orders (SPA-1; SPA-13) and remand the case with instructions that the district court apply the proper legal standard consistent with, *inter alia*, *VFS Financing* and the precedents relied upon therein.

Respectfully submitted,

/S/MARC R. LABGOLD
MARC R. LABGOLD
PATRICK J. HOEFFNER
LAW OFFICES OF MARC R. LABGOLD, PC
*Attorneys for Petitioner-Appellant*
1900 Reston Metro Plaza, Suite 600
Reston, Virginia 20191
(516) 432-6266

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and the word limit of Fed. R. App. P. 5(c)(1), as well as Local Rule 32.1(a)(4), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9,765 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: September 20, 2024

Respectfully submitted,

/s/Marc R. Labgold
Marc R. Labgold
Patrick J. Hoeffner
Law Offices of Marc R. Labgold, PC
*Attorneys for Petitioner-Appellant*
1900 Reston Metro Plaza, Suite 600
Reston, Virginia 20191
(516) 432-6266

**SPECIAL APPENDIX**

i

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

**Page**

Order, dated April 16, 2024 ...................................... SPA-1

Order, dated June 11, 2024 ...................................... SPA-13

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OFFICE CREATE CORPORATION,

 Petitioner,

– against –

PLANET ENTERTAINMENT, LLC, and
STEVE GROSSMAN,

 Respondents.

**ORDER**

22-cv-8848 (ER)

R̲a̲m̲o̲s̲,̲ ̲D̲.̲J̲.̲:

Office Create Corporation brought this action to confirm an arbitration award against Planet Entertainment, LLC, and Steve Grossman (Respondents). The Court granted Office Create's petition and entered judgment in its favor. This dispute concerns Office Create's efforts to enforce that judgment. After Office Create attempted to restrain certain Merrill Lynch accounts, Grossman claimed that those accounts were exempt from application to satisfaction of the judgment. Office Create has objected to the exemption claim. For the reasons set forth below, Office Create's objection is GRANTED IN PART and DENIED IN PART.

**I.    BACKGROUND**

The underlying facts are detailed in the Court's previous opinion granting Office Create's petition. *Office Create Corp. v. Planet Ent., LLC*, No. 22 Civ. 8848 (ER), 2023 WL 5918017 (S.D.N.Y. Sept. 11, 2023); *see* Doc. 49. As relevant here, Office Create obtained an award from an arbitration tribunal on October 3, 2022. *Office Create*, 2023 WL 5918017, at *1. The total award was over $23 million, and the tribunal held Respondents jointly and severally liable. *Id.*; *see also* Doc. 73.

Office Create filed a petition to confirm the arbitration award in this Court on October 17, 2022. Doc. 1. Respondents cross-moved to vacate the award on November 14, 2022. Doc. 24. On September 11, 2023, the Court granted Office Create's petition

SPA-2

and denied Respondents' cross-motion.  Doc. 49.  Judgment was entered the same day.
Doc. 50.[1]

On October 3, 2023, Office Create then restrained several Merrill Lynch accounts in which it claims
Grossman has an interest.  Doc. 59 at 1.  On October 3, 2023, Office Create served an
information subpoena and restraining notice on Merrill Lynch.  Doc. 59-1 ¶ 6.  Office
Create mailed a copy of that restraining notice to Grossman as well.  *Id.* ¶ 7.  On October
17, Merrill Lynch provided account statements for seven accounts to Office Create.  *Id.*
¶¶ 8–9.  Two of the accounts were designated as "Cash Management Accounts"; the other
five were designated as "Retirement Cash Management Accounts."  *Id.* ¶¶ 10–11.
Grossman and his wife were named on the cash management accounts.  Doc. 67-3 at 2–
22.  The name listed on each retirement account was "Defender Care dba E-Partners LLC
Defined Benefit Plan" or "Defender Care dba E-Partners LLC Retirement Plan."  *Id.* at
23–36 (capitalization omitted).  Office Create asserts that "Defender Care dba E-Partners"
is owned and controlled by Grossman.  Doc. 59-1 ¶ 16; *see also* Doc. 59-5.

On December 8, Office Create received an "Exemption Claim Form" from
Grossman.  Doc. 59-1 ¶ 12.  On that form, Grossman indicated that the Merrill Lynch
accounts were exempt from restraint because they contained "payments from pensions
and retirement accounts."  *Id.* (emphasis omitted); *see* Doc. 59-2 at 2–3.  He attached
statements for four of the retirement accounts.  Doc. 59-1 ¶ 12; *see* Doc. 59-2 at 4–24.
Those statements showed that the balance in each account had increased compared to the
prior statements that Office Create received from Merrill Lynch.  Doc. 59-1 ¶¶ 13–14.
According to Office Create, the total value of the seven accounts is over $2 million.  *Id.*
¶ 14.

On December 12, Office Create objected to Grossman's exemption claim.  Doc.
58.  Office Create asks the Court to reject the exemption claim, declare that the Merrill

---

[1] The original judgment did not include the specific amount to which Office Create was entitled.  An amended judgment including that amount was entered on January 30, 2024.  Doc. 73.

Lynch accounts are not exempt from application to satisfaction of the Court's judgment, and direct the release of funds in the accounts to Office Create.  Doc. 59 at 7.

Grossman responded to the objection on January 3, 2024.  Doc. 65.  The same day, nonparty Merrill Lynch entered an appearance and responded to Office Create's objection as well.  Docs. 61, 62.  Merrill Lynch stated that it is merely the "neutral custodian" of the accounts.  Doc. 62 ¶ 4.  As a result, Merrill Lynch was unable to confirm whether Office Create could reach the funds in the retirement accounts, and it requested the Court's guidance on how to proceed.  *Id.* ¶¶ 5–13.  Office Create filed a reply on January 9.  Doc. 67.

One month later, on February 9, Grossman requested permission to submit an affidavit showing that the retirement plan that owns the retirement accounts has other participants in addition to Grossman and his wife.  Doc. 79.  The Court granted the request at a status conference held on February 20.  Grossman submitted a declaration and supporting exhibits on February 26.  Doc. 82.  The next day, Office Create filed a letter objecting to Grossman's submission.  Doc. 83.

## II.   LEGAL STANDARD

A court has jurisdiction to "hear ancillary disputes relating to execution and enforcement of judgments [as] an inherent part of a court's jurisdiction over the underlying case."  *KLS Diversified Master Fund, L.P., v. McDevitt*, No. 19 Civ. 3774 (LJL), 2022 WL 220058, at *4 (S.D.N.Y. Jan. 25, 2022) (alteration in original) (citation omitted).  "The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  Fed. R. Civ. P. 69(a)(1); *accord, e.g.*, *Mitchell v. Garrison Protective Servs., Inc.*, 579 F. App'x 18, 21 (2d Cir. 2014).

Article 52 of the New York Civil Practice Law and Rules (CPLR) establishes "procedures for the enforcement of money judgments in New York, which may include

SPA-4

the imposition of a restraining notice against a judgment debtor's bank account to secure funds for later transfer to the judgment creditor through a sheriff's execution or turnover proceeding." *Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 223 (N.Y. 2013). Some funds, however, are exempt from restraint, such as "Social Security benefits, public assistance, unemployment insurance, pension payments and the like." *Id.*

CPLR section 5222-a sets out notification and claim procedures that are "intended to educate judgment debtors concerning the types of funds that are exempt from restraint or execution in order to facilitate the filing of exemption claims." *Id.* at 224. Under that provision, a judgment creditor restraining an account at a banking institution must serve the banking institution with two copies of the restraining notice, an exemption notice, and two exemption claim forms. CPLR § 5222-a(b)(1). Within two business days, the banking institution must serve a copy of the restraining notice, the exemption notice, and the exemption claim forms on the judgment debtor. *Id.* § 5222-a(b)(3). The judgment debtor then may claim an exemption by completing the forms, signing them under penalty of perjury, and serving them on the banking institution and the judgment creditor's attorney. *Id.* § 5222-a(c)(1). The judgment creditor may object to the exemption claim by serving the banking institution and the judgment debtor with its motion papers. *Id.* § 5222-a(d).[2]

---

[2] The statute also provides for a hearing to decide the motion that "shall be noticed for seven days after service of the moving papers." CPLR § 5222-a(d). It is not clear whether such a hearing is always required. *Compare Midland Funding LLC v. Singleton*, 935 N.Y.S.2d 844, 848–49 (Dist. Ct. 2011) ("The statute offers no guidance to the court as to whether this determination is to be made solely on papers or whether an evidentiary hearing is always required. . . . The use of the word 'hearing' contained in CPLR 5222-a(d) must be read to include both the traditional method of hearing a motion on papers and if the determination of whether the funds are exempt cannot be made on papers to permit an evidentiary hearing to determine . . . whether the funds on deposit in the account are exempt or if not fully exempt, the amount on deposit in the account that is exempt."), *with Midland Funding LLC v. Roberts*, 950 N.Y.S.2d 867, 870 (Sup. Ct. 2012) ("CPLR § 5222-a(d) specifically refers to holding a 'hearing' and does not provide for generally resolving these proceedings on the papers."). The parties in this case have not suggested that the Court must hold a hearing before deciding the motion. As discussed below, however, the Court will offer both parties the opportunity to request a hearing.

SPA-5

An exemption claim form executed by the judgment debtor is prima facie evidence that the funds are exempt.  *Id.*  The judgment creditor bears the burden of proof to establish the amount of funds that are not exempt.  *Id.*; *see, e.g.*, *Midland Funding LLC v. Roberts*, 950 N.Y.S.2d 867, 869 (Sup. Ct. 2012).

## III.   DISCUSSION

In this case, Grossman's exemption claim form is prima facie evidence of an exemption, and the burden is on Office Create to show that the funds in the accounts are not exempt.  CPLR § 5222-a(d).  With respect to the retirement accounts, Office Create has failed to satisfy that burden, so the objection is denied.  With respect to the cash management accounts, however, the objection is granted.

### A.  Service of the Restraining Notice

As a threshold matter, Grossman asserts that Office Create may not have properly served the restraining notice on Merrill Lynch.  Doc. 65 at 2.  According to Grossman, it is unclear whether Office Create sent the restraining notice to Merrill Lynch in Connecticut—where the accounts are located—or to Merrill Lynch in New York.  *Id.*

Grossman argues that the distinction matters because of New York's "separate entity rule."  *Id.* at 3.  Under that rule, "even when a bank garnishee with a New York branch is subject to personal jurisdiction, its other branches are to be treated as separate entities for certain purposes," including "article 52 postjudgment restraining notices and turnover orders."  *Motorola Credit Corp. v. Standard Chartered Bank*, 21 N.E.3d 223, 226 (N.Y. 2014).  "In other words, a restraining notice or turnover order served on a New York branch will be effective for assets held in accounts at that branch but will have no impact on assets in other branches."  *Id.*  Grossman contends that a restraining notice served on Merrill Lynch in New York can have no impact on Connecticut-held assets.  Doc. 65 at 3.

This argument fails because Merrill Lynch documents in the record state that Merrill Lynch "is a registered broker-dealer," Doc. 59-2 at 4, and "is not a bank," Doc.

SPA-6

67-3 at 25.  Grossman's argument does not explain why the Court should apply the separate entity rule to deny the objection in these circumstances.  *See Berkshire Bank v. Tedeschi*, No. 11 Civ. 0767 (LEK) (CFH), 2016 WL 1029526, at *2 n.2 (N.D.N.Y. Mar. 15, 2016) ("Defendant has not provided any authority for the separate entity rule applying to a brokerage account, carried by a brokerage dealer.").

### B. Retirement Accounts

With respect to the retirement accounts, the principal dispute between the parties is the application of CPLR section 5205.  That provision lists certain personal property that is "exempt from application to the satisfaction of a money judgment."  CPLR § 5205(a).  As relevant here, property is exempt if it is "held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor."  *Id.* § 5205(c)(1).  This exemption includes "all trusts, custodial accounts, annuities, insurance contracts, monies, assets or interests established as part of, and all payments from, either any trust or plan" that is qualified under section 401 of the Internal Revenue Code.  *Id.* § 5205(c)(2).

At the same time, however, this exemption is subject to an exception.  Any "[a]dditions to an asset described in paragraph two"—for instance, additions to a plan qualified under section 401 of the Internal Revenue Code—"shall not be exempt from application to the satisfaction of a money judgment if (i) made after the date that is ninety days before the interposition of the claim on which such judgment was entered, or (ii) deemed to be voidable transactions under article ten of the debtor and creditor law."  *Id.* § 5205(c)(5).

The parties agree that the five Merrill Lynch retirement accounts are qualified under section 401 of the Internal Revenue Code.  Doc. 59 at 5; Doc. 65 at 3–4.  Their disagreement concerns whether the exception found in section 5205(c)(5) applies to those accounts.  Grossman argues that it does not apply because section 5205(c) is preempted by the Employee Retirement Income Security Act of 1974 (ERISA).  Doc. 65 at 4.  He

6

relies on ERISA's anti-alienation provision, which states: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). This provision "erects a general bar to the garnishment of pension benefits from plans covered by [ERISA]." *Kickham Hanley P.C. v. Kodak Ret. Income Plan*, 558 F.3d 204, 210 (2d Cir. 2009) (quoting *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 371 (1990)).[3] Office Create did not respond to the preemption argument in its brief, so the Court may deem the point conceded. *See, e.g.*, *Felske v. Hirschmann*, No. 10 Civ. 8899 (RMB), 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").[4]

Instead, Office Create asserts that the retirement accounts are not ERISA accounts because they cover only Grossman and his wife. Doc. 67 at 3–5; *see, e.g.*, *Silverman v. Unum Grp.*, No. 14 Civ. 6439 (DLI) (SMG), 2015 WL 4603345, at *3 (E.D.N.Y. July 30, 2015) (noting that a plan "must provide benefits to at least one employee" to qualify as an ERISA plan and that "the Court cannot consider the owner of the corporation an 'employee' where the corporation is 'wholly owned by the individual or by the individual and his or her spouse'" (citations omitted)). The question for the Court, therefore, is whether the retirement accounts at issue qualify as ERISA accounts. If Grossman

---

[3] Courts have also observed, however, that ERISA's anti-alienation provision does not apply once the benefits have been distributed. *See, e.g.*, *United States v. All Funds Distributed to Weiss*, 345 F.3d 49, 57 (2d Cir. 2003) ("Only once the proceeds of the pension plan have been released to the beneficiary's hands, can creditors and others pursue claims against the funds and the funds' owner(s)."); *see also SEC v. Neto*, 27 F. Supp. 3d 434, 442 (S.D.N.Y. 2014) (collecting cases).

[4] At a status conference held on February 20, 2024, counsel for Office Create summarily cited one case, *VFS Financing, Inc. v. Elias-Savion-Fox LLC*, 73 F. Supp. 3d 329 (S.D.N.Y. 2014), for the proposition that ERISA does not preempt CPLR section 5205(c). That case, however, involved "SRA/IRA" accounts that are not covered by ERISA's anti-alienation provision. *Id.* at 341. That point was central to the court's distinction of an earlier decision, *FDIC v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. M-18-302 (KMW), 1992 WL 204380 (S.D.N.Y. Aug. 11, 1992), which held that ERISA *does* preempt section 5205(c) as it applies to pension plans. *See VFS Fin.*, 73 F. Supp. 3d at 347 n.8 (explaining that *Merrill* was "easily distinguished" because it involved pension plans, which, unlike individual retirement accounts, are covered by ERISA's anti-alienation provision). And again, Office Create did not make any preemption arguments in its briefing.

prevails on that argument, then Office Create cannot reach the funds while they are held by the plan administrator. But if Office Create is correct, then the section 5205(c)(5) exception applies, and any funds that meet the criteria set forth in that exception may be used to satisfy the judgment.

Grossman contends that the retirement plan adopted by Defender Care dba E-Partners LLC is an ERISA-qualified plan. Doc. 65 at 5. The stated purpose of the plan is to provide retirement benefits to eligible employees. Doc. 66-1 § 1.1.3. The plan also provides:

> The right of any Participant or his Beneficiary in any distribution hereunder or to any Account shall not be subject to alienation, assignment, or transfer, voluntarily or involuntarily, by operation of law or otherwise, except as may be expressly permitted herein. No Participant shall assign, transfer, or dispose of such right, nor shall any such right be subjected to attachment, execution, garnishment, sequestration, or other legal, equitable, or other process.

*Id.* § 3.11.5. Furthermore, Grossman asserts that Defender Care dba E-Partners LLC is the sponsor of the retirement plan and the retirement accounts at issue, "which exist for the benefit of the Retirement Plan and the participants in the plan." Doc. 65 at 6. And Grossman maintains that he is just one of multiple participants in the plan. *Id.*

In response, Office Create insists that the retirement accounts are not ERISA-qualified plans because they cover only Grossman and his wife. Doc. 67 at 4. Office Create points to the last page of the plan's adoption agreement, which is signed by Grossman and his wife. *Id.* (citing Doc. 66-2 at 57). According to Office Create, this means that Grossman and his wife are the only individuals who have executed an adoption agreement—which is required to participate in the plan. *Id.* at 4–5 (citing Doc. 66-1 at 16, 21).

The Court fails to see how the adoption agreement compels that conclusion. Grossman and his wife appear to have signed the adoption agreement in their respective roles as president and vice president of E-Partners. The line preceding their signatures

indicates that the company "hereby adopts the Plan." Doc. 66-2 at 57. But it does not necessarily follow that no other individuals signed an adoption agreement in their capacity as employees.[5]

Furthermore, Grossman has submitted documents indicating that the plan has additional participants. For one, there are copies of Form 5500, which must be filed with the Department of Labor by employers who adopt and sponsor a retirement plan governed by ERISA. Doc. 82 ¶ 3. Grossman asserts that E-Partners has never filed a Form 5500-EZ, which is required for plans that do not provide benefits for anyone other than the owner and the owner's spouse. *Id.* ¶ 4. Instead, E-Partners has filed a Form 5500-SF each year since 2019. *Id.* ¶ 5. The 2019 version of that form states that there were sixteen total participants at the beginning of the plan year and seventeen total participants at the end of the plan year. Doc. 82-2 at 2. The 2020 version of the same form states that there were twenty total participants at the beginning of the plan year and nineteen total participants at the end of the plan year. Doc. 82-4 at 5; *see also id.* at 2 (summary annual report stating that nineteen people "were participants in or beneficiaries of the plan at the end of the plan year"). The 2022 version of the form states that there were fifteen total participants at the beginning of the plan year and eight total participants at the end of the plan year. Doc. 82-6 at 3. And the 2023 version of the form states that there were seven total participants at the beginning and end of the plan year. Doc. 82-7 at 2. On each year's form, the name of the plan is "Defender Care dba E-Partners LLC Defined Benefit Plan," and the plan sponsor is "Defender Care dba E-Partners LLC."

Grossman has also submitted an "Employee Census" for the 2019 plan year. Doc. 82-3. That document lists fifteen individuals—not including Grossman and his wife—as

---

[5] It is not even clear that an employee must sign an adoption agreement to participate. The provisions of the plan cited by Office Create state that eligible employees shall become participants "upon satisfying the eligibility requirements set forth in the Adoption Agreement" and that their participation begins "on the applicable Entry Date selected in the Adoption Agreement." Doc. 67 at 4–5 (quoting Doc. 66-1 §§ 2.1.1, 2.1.2.). Those provisions indicate that the adoption agreement sets out criteria for eligibility—not that an employee must sign an adoption agreement to become a participant.

new participants in the plan. *Id.* Three other individuals are listed as currently ineligible, but the form notes their "anticipated participation" beginning in 2020. *Id.* Additionally, for the year 2021, Grossman has submitted a "Participant Statement" for three individuals other than himself and his wife. Doc. 82-5 at 4–6. Those statements show the estimated retirement benefits for each participant. *Id.*

In response to these submissions, Office Create asserts that the exhibits do not relate to the Merrill Lynch accounts at issue but rather "pertain to accounts held at Lincoln Financial Group." Doc. 83 at 1. All the documents, however, refer to the Defender Care dba E-Partners LLC Defined Benefit Plan. Likewise, the entity named on all the retirement accounts Office Create seeks to restrain is either "Defender Care dba E-Partners LLC Defined Benefit Plan" or "Defender Care dba E-Partners LLC Retirement Plan." Doc. 67-3 at 23–36 (capitalization omitted).

Office Create also argues that Grossman's declaration contains "patently false statements" and that "there are valid concerns about the authenticity of the appended exhibits." Doc. 83 at 1. But Office Create does not meaningfully elaborate on those accusations. Again, the burden is on Office Create to show that the funds in the retirement accounts are not exempt. CPLR § 5222-a(d). Office Create has failed to do so.

### C. Cash Management Accounts

The parties' briefs pay significantly less attention to the two Merrill Lynch cash management accounts. Office Create asserts that these are not retirement accounts but rather are "merely brokerage accounts with a check writing option." Doc. 59 at 5. And contrary to Grossman's representation on the exemption claim form, the accounts do not appear to receive "payments from pensions and retirement accounts." *Id.* at 6; *see* Doc. 59-2 at 2–3.

The Court agrees with Office Create. There is no evidence before the Court to indicate that the cash management accounts qualify for the exemption that Grossman has

asserted.  While the exemption claim form itself is prima facie evidence, it is not "conclusive proof of an entitlement to an exemption."  *Midland Funding LLC v. Singleton*, 943 N.Y.S.2d 373, 378 (Dist. Ct. 2012).  As one New York court has observed, the state legislature "could not possibly have intended to permit a person to obtain an exemption simply by checking a box on the Exemption Claim Form, signing that form and timely mailing [it] back to the judgment creditor's attorney."  *Id.*  Grossman has not provided the kind of evidence supporting the exempt status of the cash management accounts that he has for the retirement accounts.[6]

Accordingly, the Court finds that Grossman's exemption claim is deficient with respect to the cash management accounts.  Any funds in those accounts—that is, the Merrill Lynch accounts ending in "1857" and "1877"—are not exempt from application to satisfaction of this Court's judgment.

## IV.    CONCLUSION

For the foregoing reasons, Office Create's objection to the exemption claim is GRANTED IN PART and DENIED IN PART, as follows:

With respect to the retirement accounts, the objection is DENIED.  But the denial is without prejudice because, as noted above, CPLR section 5222-a(d) contemplates that the Court may hold a hearing before making this determination.  If Office Create believes it can show—through documentation, examination of witnesses, or some other evidence—that the retirement accounts at issue are not ERISA-qualified accounts, it may

---

[6] In a footnote, Grossman argues that even if the cash management accounts are not retirement accounts, "it is of no moment" because the cash management accounts have no funds in them, "other than one which may have four cents in it."  Doc. 65 at 6 n.3.  The Court fails to see how this lack of funds means that the accounts qualify as exempt; if anything, it contradicts Grossman's assertion on the exemption claim form that the accounts contain "[p]ayments from pensions and retirement accounts."  Doc. 59-2 at 3.

11

SPA-12

request such a hearing by April 23, 2024.  If Office Create fails to request a hearing by that date, its objection will be denied with prejudice.

      With respect to the cash management accounts, the objection is GRANTED.  But Grossman may request a hearing to offer evidence that the cash management accounts qualify as exempt.  He also must do so by April 23, 2024.

It is SO ORDERED.

Dated:    April 16, 2024
          New York, New York

_____
      EDGARDO RAMOS, U.S.D.J.

SPA-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OFFICE CREATE CORPORATION,

                Petitioner,

       – *against* –

PLANET ENTERTAINMENT, LLC, and
STEVE GROSSMAN,

                Respondents.

**<u>ORDER</u>**

22-cv-8848 (ER)

<u>Ramos, D.J.</u>:

      On April 16, 2024, the Court granted in part and denied in part Office Create Corporation's objection to an exemption claim submitted by Steve Grossman.  Doc. 86.  Office Create has moved for reconsideration of that order.  Doc. 90.  The motion is DENIED.

**I.    BACKGROUND**

      The underlying facts and procedural history are set out in the Court's previous opinions granting Office Create's petition to confirm the arbitration award, *Office Create Corp. v. Planet Ent., LLC*, No. 22 Civ. 8848 (ER), 2023 WL 5918017 (S.D.N.Y. Sept. 11, 2023); *see* Doc. 49, and granting in part and denying in part Office Create's objection to the exemption claim submitted by Grossman, *Office Create Corp. v. Planet Ent., LLC*, No. 22 Civ. 8848 (ER), 2024 WL 1638728 (S.D.N.Y. Apr. 16, 2024); *see* Doc. 86.  The relevant details are repeated below.

      Office Create obtained an award from an arbitration tribunal on October 3, 2022.  *Office Create*, 2023 WL 5918017, at *1.  The total award was over $23 million, and the tribunal held Grossman and Planet Entertainment, LLC, jointly and severally liable.  *Id.*; *see also* Doc. 73.  Office Create filed a petition to confirm the arbitration award in this Court on October 17, 2022.  Doc. 1.  Grossman and Planet cross-moved to vacate the award on November 14, 2022.  Doc. 24.  On September 11, 2023, the Court granted

Office Create's petition and denied the cross-motion.  Doc. 49.  Judgment was entered the same day.  Doc. 50.[1]

　　　　Office Create then restrained several Merrill Lynch accounts in which it claimed Grossman has an interest.  Doc. 59 at 1.  On October 3, 2023, Office Create served an information subpoena and restraining notice on Merrill Lynch.  Doc. 59-1 ¶ 6.  Office Create mailed a copy of that restraining notice to Grossman as well.  *Id.* ¶ 7.  On October 17, Merrill Lynch provided account statements for seven accounts to Office Create.  *Id.* ¶¶ 8–9.  Two of the accounts were designated as "Cash Management Accounts"; the other five were designated as "Retirement Cash Management Accounts."  *Id.* ¶¶ 10–11. Grossman and his wife were named on the cash management accounts.  Doc. 67-3 at 2–22.  The name listed on each retirement account was "Defender Care dba E-Partners LLC Defined Benefit Plan" or "Defender Care dba E-Partners LLC Retirement Plan."  *Id.* at 23–36 (capitalization omitted).  Office Create asserted that "Defender Care dba E-Partners" is owned and controlled by Grossman.  Doc. 59-1 ¶ 16; *see also* Doc. 59-5.

　　　　On December 8, Office Create received an "Exemption Claim Form" from Grossman.  Doc. 59-1 ¶ 12.  On that form, Grossman indicated that all the Merrill Lynch accounts were exempt from restraint because they contained "payments from pensions and retirement accounts."  *Id.* (emphasis omitted); *see* Doc. 59-2 at 2–3.  He attached statements for four of the retirement accounts.  Doc. 59-1 ¶ 12; *see* Doc. 59-2 at 4–24.  Those statements showed that the balance in each account had increased compared to the prior statements that Office Create received from Merrill Lynch.  Doc. 59-1 ¶¶ 13–14. According to Office Create, the total value of the seven accounts is over $2 million.  *Id.* ¶ 14.

　　　　On December 12, Office Create objected to Grossman's exemption claim.  Doc. 58.  Office Create asked the Court to reject the exemption claim, declare that the Merrill

---

[1] The original judgment did not include the specific amount to which Office Create was entitled.  An amended judgment including that amount was entered on January 30, 2024.  Doc. 73.

Lynch accounts were not exempt from application to satisfaction of the Court's judgment, and direct the release of funds in the accounts to Office Create.  Doc. 59 at 7.

Grossman responded to the objection on January 3, 2024.  Doc. 65.  The same day, nonparty Merrill Lynch entered an appearance and responded to Office Create's objection as well.  Docs. 61, 62.  Merrill Lynch stated that it is merely the "neutral custodian" of the accounts.  Doc. 62 ¶ 4.  As a result, Merrill Lynch was unable to confirm whether Office Create could reach the funds in the retirement accounts, and it requested the Court's guidance on how to proceed.  *Id.* ¶¶ 5–13.  Office Create filed a reply on January 9.  Doc. 67.

One month later, on February 9, Grossman requested permission to submit an affidavit showing that the retirement plan that owns the retirement accounts has other participants in addition to Grossman and his wife.  Doc. 79.  The Court granted the request at a status conference held on February 20.  Grossman submitted a declaration and supporting exhibits on February 26.  Doc. 82.  The next day, Office Create filed a letter objecting to Grossman's submission.  Doc. 83.

The Court granted in part and denied in part Office Create's objection to the exemption claim.  *Office Create*, 2024 WL 1638728, at *7.  The Court denied the objection with respect to the retirement accounts.  *Id.* at *3–6.  As the Court explained, the principal dispute between the parties was the application of New York Civil Practice Law and Rules (CPLR) section 5205.  *Id.* at *3.  That provision exempts certain property, including funds in qualifying retirement plans, from being used to satisfy a judgment.  *Id.* But the exemption is itself subject to an exception:  additions to qualifying assets are not exempt if "(i) made after the date that is ninety days before the interposition of the claim on which such judgment was entered, or (ii) deemed to be voidable transactions under article ten of the debtor and creditor law."  *Id.* (quoting CPLR § 5205(c)(5)).

The parties disputed whether the exception found in section 5205(c)(5) applied to the retirement accounts at issue.  *Id.* at *4.  Grossman argued that the exception did not

SPA-16

apply because section 5205(c) is preempted by the Employee Retirement Income Security Act of 1974 (ERISA). *Id.* The Court deemed that argument conceded because Office Create's briefs did not address it. *Id.* Instead, Office Create maintained that the retirement accounts were not ERISA accounts because they covered only Grossman and his wife. *Id.* And the Court rejected that argument based on documents in the record showing that the retirement plan had additional participants. *Id.* at *5–6.

With respect to the cash management accounts, however, the Court granted Office Create's objection. *Id.* at *6. In addition, the Court offered both parties the opportunity to request a hearing on the objection, as contemplated by CPLR section 5222-a(d). *Id.* at *7; *see also id.* at *2 n.2. Office Create has moved for reconsideration of the Court's decision with respect to the retirement accounts. Doc. 90. Respondents assert that Office Create's motion is misleading and improper and that Office Create should be ordered to pay their costs incurred in responding to the motion. Doc. 95 at 1.[2]

## II.    LEGAL STANDARD

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). "A motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and citation omitted). It is "not a vehicle for relitigating old issues, presenting the case under new

---

[2] Office Create also requested that the Court hold a hearing to determine the status of the funds in the accounts. Doc. 87. Respondents asserted that a hearing was not necessary. Doc. 88. After the Court scheduled a conference to address the request for a hearing, Doc. 89, Office Create filed its motion for reconsideration, Doc. 90. The parties agreed that the conference—and any hearing—should be stayed pending the resolution of the reconsideration motion. Doc. 91 at 8–9; Doc. 93.

theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs.*, 684 F.3d at 52 (internal quotation marks and citation omitted). The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

## III.   DISCUSSION

Office Create argues that the preemption analysis in the Court's order was unnecessary because there is a threshold issue as to whether the funds were improperly transferred into the Merrill Lynch accounts in an effort to frustrate enforcement of the judgment. Doc. 91 at 1–2. In particular, Office Create says the Court overlooked its argument that "the funds were transferred from non-exempt accounts during the look-back period, thereby rendering them subject to clawback regardless of the ERISA status of the alleged retirement accounts." *Id.* at 3. According to Office Create, "[b]ecause the fraudulent transfers were made from the Respondents' corporate and personal accounts during the look-back period, the subject funds are reachable, and no consideration of ERISA's anti-alienation provisions or preemption of CPLR article 52 was necessary or warranted." *Id.* at 4.

These arguments are not persuasive and do not warrant reconsideration. In its opening brief objecting to the exemption claim, Office Create asserted that CPLR section 5205(c)(5) applied and that the retirement accounts were properly restrained. Doc. 59 at 4–5. Grossman responded that Office Create's claim was barred by ERISA. Doc. 65 at 3. His argument had two parts: first, that the retirement plan was an ERISA-qualified plan, *id.* at 5–7; and second, that section 5205(c)(5) was preempted by ERISA, *id.* at 7–14. In its reply brief, Office Create addressed only the first part of Grossman's argument, maintaining that the accounts were not ERISA-qualified plans because the sole participants were Grossman and his wife. Doc. 67 at 3–5. Office Create did not address whether section 5205(c)(5) was preempted by ERISA.

5

Office Create now contends that the Court did not need to decide the preemption question at all.  In Office Create's view, the Court erred by failing to address the threshold issue as to "whether the funds are rightfully held within the retirement accounts in the first instance."  Doc. 91 at 6.  "If they are not," Office Create says, "then ERISA's anti-alienation provisions are moot because the Court can adjudicate the fraudulent conveyance claim without needing to reach the ERISA preemption issue."  *Id.*

Office Create has it backward.  The threshold question is whether ERISA preempts section 5205(c)(5).  To the extent Office Create has raised a "fraudulent conveyance claim," that claim stems from the provision in section 5205(c)(5) that additions to a qualifying plan are not exempt if they are made during the lookback period or are deemed voidable transactions.  *See* CPLR § 5205(c)(5).  If section 5205(c)(5) is preempted, then it makes no difference whether the transfers were made during the lookback period or could be deemed voidable transactions—section 5205(c)(5)'s exception simply does not apply, and the funds are not available to satisfy the judgment.

As discussed above, Office Create responded to only part of Grossman's ERISA argument in the original briefing.  Office Create argued that the retirement accounts are not ERISA accounts because they cover only Grossman and his wife.  *Office Create*, 2024 WL 1638728, at *4 (citing Doc. 67 at 3–5).  The Court rejected that argument because documents submitted by Grossman clearly showed that the retirement plan has additional participants.  *Id.* at *5–6.  Office Create did not respond to Grossman's assertion that ERISA preempted section 5205(c)(5), so the Court deemed the argument conceded.  *Id.* at *4.

Office Create insists that it contested the preemption issue at the conference held on February 20, 2024.  Doc. 91 at 4.  As the Court noted in its order, Office Create cited a single case—*VFS Financing, Inc. v. Elias-Savion-Fox LLC*, 73 F. Supp. 3d 329 (S.D.N.Y. 2014)—at that conference for the proposition that section 5205(c) is not preempted by ERISA.  *Office Create*, 2024 WL 1638728, at *4 n.4.  The Court has already explained

6

SPA-19

why *VFS Financing* does not help Office Create, *see id.*, and the motion for reconsideration provides no reason for the Court to revisit that conclusion.[3]

For the first time, Office Create also relies on *Planned Consumer Marketing, Inc. v. Coats & Clark, Inc.*, 522 N.E.2d 30 (N.Y. 1988), which it says involved similar facts. Doc. 91 at 6. According to Office Create, *Planned Consumer* illustrates that the Court would not have needed to reach the preemption issue if it had initially determined that the transfers were voidable. Doc. 96 at 7. This argument is puzzling because *Planned Consumer* did, in fact, decide a preemption question. *See* 522 N.E.2d at 32 ("We conclude that ERISA does not preempt vindication of these State laws whose purpose is to inhibit the transfer of money in defraud of creditors, not to assess or regulate employee benefit plans."). Respondents, for their part, contend that *Planned Consumer* was undermined by the Supreme Court's subsequent ERISA decision in *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365 (1990). Doc. 95 at 8–9; *see also Majteles v. AVL Corp.*, 696 N.Y.S.2d 748, 751–52 (Sup. Ct. 1999) (New York trial court followed *Guidry* rather than *Planned Consumer* in holding that any proceeds "unlawfully paid to the pension fund defendants which remain within the fiduciary responsibility of the plan managers" were protected by ERISA's anti-alienation provisions). In any event, Office Create did not mention *Planned Consumer* at all in its original briefing, and the Court will not consider the argument for the first time on a motion for reconsideration. *See, e.g.*, *Navigators Ins. Co. v. Goyard, Inc.*, 623 F. Supp. 3d 220, 223 (S.D.N.Y. 2022) ("In deciding a motion for reconsideration, a court need not consider previously uncited cases, which necessarily do not involve an intervening change of law.").

---

[3] Even in its motion for reconsideration, Office Create never actually explains why section 5205(c)(5) is not preempted by ERISA. Instead, it argues that preemption questions should be decided only if necessary. Doc. 91 at 5–6. But for the reasons discussed above, the preemption question raised by Grossman cannot be avoided.

SPA-20

**IV.     CONCLUSION**

For the foregoing reasons, Office Create's motion for reconsideration is DENIED. Office Create's request for oral argument is DENIED as moot.  Respondents' request for costs is also DENIED.  While the Court is not persuaded by Office Create's motion, it does not find that the motion "is brought in bad faith or obviously frivolous."  *Sood v. Rampersaud*, No. 12 Civ. 5486 (VB), 2013 WL 1681261, at *3 (S.D.N.Y. Apr. 17, 2013).

The parties are directed to appear for a telephonic status conference to address Office Create's request for a hearing on June 28, 2024, at 10:30 a.m.  The parties should dial 877-411-9748 and enter access code 3029857# when prompted.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 90.

It is SO ORDERED.

Dated:     June 11, 2024
              New York, New York

_____
            EDGARDO RAMOS, U.S.D.J.

8